haynesboone

July 5, 2016

**Jonathan D. Pressment, Esq.**
Direct Phone Number: 212-918-8961
Direct Fax Number: 212-884-9561
*Jonathan.pressment@haynesboone.com*

***BY ECF***

The Honorable Vernon S. Broderick
United States District Court Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 415
New York, New York 10007

***Re***: ***Aaron Rubenstein v. Kenneth Londoner and BioSig Technologies, Inc.***;
***Case No. 16 CIV 3327 (VSB)***

Dear Judge Broderick:

We represent defendant Kenneth Londoner ("Mr. Londoner") and "nominal defendant" BioSig Technologies, Inc. ("BioSig" and, collectively with Londoner, "Defendants") in the above-referenced matter (the "Action"). We write pursuant to Rule 4A of Your Honor's Individual Rules and Practices to request a pre-motion conference with the Court based upon Defendants' intent to move for dismissal of the Action pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").

By way of relevant background, this Action involves a claim for the recovery of "up to" $65,000 in alleged "short-swing" profits that Plaintiff contends Mr. Londoner earned as a result of his sale and subsequent purchase of BioSig securities between August 6, 2015 and October 23, 2015. However, on the face of Plaintiff's complaint (the "Complaint"), Mr. Londoner did not profit from the transactions at issue *at all*.

Indeed, the allegations of the Complaint with respect to the purchase and sale at issue are fatal to Plaintiff's claims. Specifically, Plaintiff alleges that Mr. Londoner sold 100,000 shares of BioSig common stock on August 6, 2015 at a price of $0.50. (Compl. ¶ 11.) Plaintiff's allegations as to the price at which Mr. Londoner sold these shares is confirmed by the Form 4 that Mr. Londoner filed with the United States Securities and Exchange Commission on August 11, 2015. *See* https://www.sec.gov/Archives/edgar/data/1449534/000118518515002101/xslF345X03/form4-londoner081115.xml.[1]

[1] Although Plaintiff affirmatively alleges that Mr. Londoner sold his stock at a price of $0.50 on August 6, 2015, even were this not the case, it is well-settled that, on a motion to dismiss, the Court may consider documents publicly filed with the Securities and Exchange Commission ("SEC") as well as documents referenced in the complaint and/or incorporated by reference therein. *See Chechele v. Vicis Capital, LLC*, No. 11 Civ. 2191

Plaintiff further alleges that on October 23, 2015, Mr. Londoner purchased 66,667 "Units" of BioSig stock (consisting of one share of BioSig common stock and one warrant to purchase one-half of one share of BioSig common stock) at a price of $1.50 per unit -- purportedly to cover the stock that he sold in August 2015. (Compl. ¶ 12.) Accordingly, on the face of the Complaint, Mr. Londoner did not profit as a result of the transactions at issue at all. To the contrary, he paid a $1.00 *more* for the "Units" purchased in October 2015 (at a price of $1.50) than he sold the 100,000 shares of BioSig common stock for in August 2015 (at a price of $0.50).

Plaintiff's claims to the contrary rest on the unfounded assertion that Section 16(b) of the Securities Exchange Act of 1934 ("Section 16(b)") requires that Mr. Londoner's transactions be valued at the prevailing market prices for BioSig's stock on the dates in question rather than the actual prices at which Mr. Londoner sold and later purchased the securities at issue. As a result, Plaintiff maintains that the Court should ignore the fact that, as Plaintiff readily concedes, Mr. Londoner sold his 100,000 shares of common stock at a price of $0.50 a share, and assign to that sale a value of $1.85 per share (the highest price at which BioSig's common stock was purportedly trading on the date of sale). Plaintiff is mistaken.

In fact, Section 16(b) specifically provides for the recovery of profits actually "*realized*" by insiders of a company as a result of the purchase and sale, or sale and purchase of such stock within a six-month period. *Chechele v. Vicis Capital, LLC*, No. 11 Civ. 2191 (KBF), 2012 WL 310943, *2 (S.D.N.Y. Jan. 31, 2012). Here, on the face of the Complaint, Mr. Londoner did not "realize" any profit from his sale and subsequent purchase of BioSig stock. His sale of 100,000 shares of common stock in August 2015 was completed at a price of $0.50 -- $1.00 less than the price at which he purchased his warrants ($1.50) in October 2015.

Plaintiff's theory of liability relies on a tortured reading of Rule 16b-6(c)(2), which provides a means by which short-swing profits "*may be* measured" in instances where transactions involving the "purchase and sale or sale and purchase of derivative securities having different characteristics but related to the same underlying security . . . or derivative securities and underlying securities" are at issue. 17 C.F.R. § 240.16b-6(c)(2).

Specifically, Rule 16b-6(c)(2) provides that when transactions involving common stock are matched against transactions involving a derivative security -- such as Mr. Londoner's "Units" -- for purposes of computing alleged short-swing profits, *the derivative* may be assigned a value equal to the market price of the underlying security as of the date of the transaction. *Id.* The statute itself makes this clear by specifying that the market value attaches to the "matching purchase *or* sale" of the derivative not *both* ends of a transaction where one side of the transaction

(KBF), 2012 WL 310943, *1 (S.D.N.Y. Jan. 31, 2012) *citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

at issue involves the purchase or sale of ordinary common stock (the price of which is expressly acknowledged) as opposed to a derivative security.

In other words, Rule 16b-6(c)(2) does *not* require that a Court disregard *a claimant's* affirmative allegations regarding the price at which ordinary common stock is actually bought or sold -- especially, where, as here, the actual price is confirmed by the plaintiff's own allegations and further confirmed by the public filing of a Form 4. Rather, the purpose of Rule 16b-6(c)(2) is to avoid a "battle of the experts" with respect to the valuing *of the derivative* portion of an alleged short-swing transaction. *See Segen v. Westcliff Capital Mgmt., LLC*, 299 F. Supp. 2d 262, 270 (S.D.N.Y. 2004).

Here, there is no danger of a "battle of the experts" regarding a valuation of the sale price of Mr. Londoner's common stock on August 6. Plaintiff admits that Mr. Londoner sold his stock at a price of $0.50 -- a price confirmed by Mr. Londoner's Form 4. Rather, in this case, Rule 16b-6(c)(2) only operates to permit the Court to value Mr. Londoner's "*Units*" at the market price of the underlying common stock on the date of the purchase (October 23). However, even accepting this valuation, Mr. Londoner would not have profited as a result of the transactions at issue. Under Rule 16b-6(c)(2), Mr. Londoner would be deemed to have purchased the stock component of his BioSig "Units" at a price of $1.20 (the lowest price for BioSig's common stock on October 23) -- a loss of $0.70 per share when judged against the price at which he sold his BioSig stock on August 6 ($0.50 per share).

Further, Rule 16b-6(c)(2) merely provides *a ceiling cap* for the computation of alleged short-swing profits with respect to transactions involving derivative securities -- it does not mandate that alleged short-swing profits be computed in such a manner. 17 C.F.R. § 240.16b-6(c)(2) ("Short-swing profits in transactions involving the purchase and sale or sale and purchase of derivative securities having different characteristics but related to the same underlying security . . . or derivative securities and underlying securities *shall not exceed* the difference in price of the underlying security on the date of the purchase or sale and the date of the sale or purchase.").

We are aware of no case where a Court has found that a claimant may ignore the actual price at which ordinary common stock -- not a derivative security, but common stock -- was bought or sold in order to assign a market value to that transaction for the purposes of computing alleged "short-swing" profits. Indeed, any such result -- especially where, as here, Plaintiff affirmatively acknowledges the actual price at which a sale of common stock was completed -- would be nothing short of Draconian. Accordingly, Defendants respectfully request that they be given leave to file a motion to dismiss the Action pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

Jonathan D. Pressment

haynesboone

The Honorable Vernon S. Broderick
July 5, 2016
Page 4

cc: Miriam Tauber, Esq. (*counsel for Plaintiff*) (*By ECF*)