# MIRIAM TAUBER LAW
885 Park Avenue 2A • New York, NY 10075
MiriamTauberLaw@gmail.com • (323) 790-4881

July 8, 2016

**Via ECF**
Hon. Vernon S. Broderick, U.S.D.J.
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 415
New York, NY 10007

Re:   *Rubenstein v. Londoner*, No. 16 Civ. 3327 (VSB):
       Plaintiff's response to Defendants' pre-motion letter

Your Honor:

I am Plaintiff's counsel in the above-captioned matter. I write in response to Defendants' July 5 letter requesting a pre-motion conference in anticipation of moving to dismiss in lieu of answering Plaintiff's Complaint. I suggest that a motion to dismiss may be a useful way to test Defendants' understanding of the applicable law. I also invite Defendants to establish the facts relied on in their letter, by submitting properly authenticated transaction documents reflecting the terms described in support of their proposed motion.

Additionally, I request that the agenda for the pre-motion conference be expanded to include Plaintiff's motion to disqualify defense counsel from appearing, as he announces in the first paragraph of his letter, for both the issuer, BioSig—the intended beneficiary of this action, and for the insider, Londoner, its intended target. The conflict of interest created by this announced dual representation is irreconcilable.

This is a shareholder suit brought under Section 16(b) of the Securities Exchange Act, 15 U.S.C § 78p(b), to recover "short swing" profits realized by Defendant Kenneth L. Londoner, the founder Chairman, and CEO of Nominal Defendant BioSig Technologies, Inc., from purchases and sales of Biosig securities within periods of less than six months. Section 16(b) is a remedial, strict liability statute that "operates mechanically," *e.g.*, *Magma Power v. Dow Chem. Co.*, 136 F.3d 316, 320-21 (2d Cir. 1998).

Section 16(b) eliminates the need to meet burdens of proof with respect to potentially uncertain factual issues—including the insider's actual use of insider knowledge, motive, intent, causation, or economic benefit. Instead, the statute "impos[es] liability based upon an objective measure of proof" of an insider's short swing transactions, and an equally objective "method of computing profits." *Smolowe v. Delendo Corp.*, 136 F.2d 231, 236-38 & n. 3-9 (2d Cir 1943) (quoting various Congressional hearings regarding the enactment of Section 16(b)). The treatment of various transactions as purchases or sales, and the calculation of profits subject to disgorgement when different types of purchase and sale transactions are "matched," are prescribed by a set of rules and regulations promulgated by the Securities & Exchange Commission ("SEC"), as authorized under the statute.

This case involves Defendants' sale of stock and purchase of derivative securities less than six months later. In 1991, the SEC issued revised Rules establishing the current framework for the treatment of derivative securities under Section 16(b). Under Rule 16b-6(c), the purchase or sale of derivative security may be "matched" under the statute against a purchase or sale of underlying stock. Rule 16b-6(c)(2) governs the calculation of profits from this short swing transaction "pair."

Rule 16b-6(c)(2) provides: "Short-swing profits in transactions involving the purchase and sale or sale and purchase of … derivative securities and underlying securities shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase." *In the alternative,* the Rule provides that "profits may [*also*] be measured by calculating the short-swing profits that would have been realized had the subject transactions involved purchases and sales solely of the derivative security that was purchased or solely of the derivative security that was sold …" 17 C.F.R. § 240.16b-6(c)(2).

Plaintiff's claim identifies a "purchase" and "sale" under Section 16(b), and calculates maximum potentially recoverable short swing profits in the manner expressly provided by applicable SEC Rules—by reference to the "price of the underlying security" (BioSig common stock) on both the purchase and the sale date. Defendants' chief objection is that Plaintiff does not use the price that Defendants reported having paid or received for either the purchase *or* the sale "matched" by Plaintiff, as that price was reflected in their filings with the SEC. But nothing in the Rule or under Section 16(b) requires Plaintiff to use Defendants' reported prices for either "end of the transaction" when matching stock against derivatives.

To the contrary, it is well-settled that the "price" at which transactions must be matched under Rule 16b-6(c)(2)—which applies *whenever* a derivative transaction is matched with underlying stock—is the *market price*, either of the "underlying security" on the dates of purchase *and* sale; or, alternatively, of the "derivative security" on the date of purchase *or* sale.[1] Under both methods, the *market price* ascribed under Rule 16b-6(c)(2) is distinguished from the *actual price* of the transaction; courts have expressly confirmed that the latter is used *only* under Rule 16b-6(c)(1) where two stock transactions are matched with each other and no derivatives are involved. *Eg.*, *Segen v. Westcliff Capital Mgmt., LLC*, 299 F. Supp. 262, 267-71 (S.D.N.Y. 2004) (quoting SEC Release No. 34-26333, 53 Fed. Reg. 49997, 5009 (Dec. 13, 1988)). And no scenario under either Rule would require Plaintiff to use Defendants' unsubstantiated *reported prices* for any matched transaction, regardless of the type of securities purchased or sold.

---

[1] Defendants' argument that one, but not both, "ends of the transaction" should have been converted to the market price, appears to be based on the misconception that Plaintiff is utilizing the alternative, "derivative security" formula provided by the Rule, which contains the disjunctive working Defendants cite. Plaintiff is rather relying on the primary "underlying security" formula, and calculating Londoner's maximum potential short swing profits based on the market prices of the underlying security on the dates of *both* the purchase *and* sale, consistent with the conjunctive wording of the first prong of the Rule.

Fundamentally, Defendants urge the Court to dismiss this case on the basis of their own statements from their SEC filings. Defendants assert that Londoner reported buying derivative securities at a higher price than he received for the sale of stock; thereby purporting to prove that Londoner could not have "realized" a profit under Section 16(b) as a matter of law. Apart from being wrong on the substance of the law, applied as prescribed under the statute, Defendants' statements regarding their "purchase" and "sale" prices and describing the terms of their alleged transactions are hearsay, plain and simple. These statements cannot be relied on for their ultimate truth (and thus cannot independently "confirm" any fact alleged by Plaintiff or otherwise, as Defendants suggest), nor can they be credited over contrary facts in the public record (e.g., regarding the contemporaneous market price of the underlying stock), as alleged in Plaintiff's complaint. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 511 (2d. Cir. 2007) (finding that the district court "improperly considered the representations in defendants' filings for the truth of their assertions …. Even assuming that those factual assertions were relevant, they raised issues of fact that should not have been determined at the pleading stage.")

Neither Plaintiff nor the Court can presently verify any of Defendants' bare and inadmissible factual assertions, made in their SEC filings and reiterated in their letter to the Court, regarding the relevant details of their transactions. In that respect, Plaintiff respectfully suggests that this case would benefit, first and foremost, from Defendants' production of the underlying transaction documents. Those documents may confirm Plaintiff's allegation that the significant discrepancy between reported and market prices reflects unreported consideration embedded in one or both of the transactions, or they may establish the purchase price ascribed to the stock and warrant components of each Unit, thereby resolving another factual issue raised in Plaintiff's Complaint. The terms of the agreements governing Londoner's transactions might, on the other hand, explain the gap between market and reported prices—perhaps even in a manner sufficient to satisfy Plaintiff that no Section 16(b) violation in fact occurred.

In all events, Plaintiff's claim cannot be adjudicated unless original documents are produced to support Defendants' factual assertions on any ultimate issue. Defendants' paraphrasing of the contents of the transaction documents does not substitute for their source. Given Defendants' central reliance their own self-serving serving and unverified descriptions of the alleged transactions—on the strength of which they propose that the Court dismiss the Complaint, overriding allegations ordinarily to be taken as true at this stage—Defendants might be reminded that they will be expected to prove the facts asserted in support of any motion that the Court is inclined to allow.

       Respectfully submitted,

       *s/ Miriam Tauber*

       Miriam Tauber